IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MUSTAFA ABDULLAH, et al.,                )
                                          )
            Plaintiffs,                   )
                                          )  Cause No. 4:14cv-1436 CDP
v.                                        )
                                          )
ST. LOUIS COUNTY, MISSOURI, et al.,       )
                                          )
            Defendants.                   )

### ST. LOUIS COUNTY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

COMES NOW St. Louis County, Missouri ("County"), and in opposition to Plaintiff's Motion for Attorneys' Fees and Costs (Doc. #69), offers the following:

*Introduction*

County does not contest that Plaintiff is a prevailing party entitled to reasonable attorney fees and costs. However, the decision to award or deny attorney fees rests within the sound discretion of the court. *In re Genetically Modified Rice Litigation*, 764 F.3d 864, 871 (8th Cir. 2014). In determining the lodestar amount involved in making the fee award, the Court should exclude hours claimed by the prevailing party's attorneys that were not reasonably expended, and that were excessive, redundant or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The amount of attorney fees claimed by Plaintiff is very excessive, particularly the amount claimed for the services of Munger, Tolles & Olson, LLP ("MTO"). MTO over-lawyered the case, and because it block billed so many tasks, it cannot be known by how much. Further, Plaintiff has not met his burden of proving the need to have hired the extra-jurisdictional MTO rather than retaining local counsel. (County does not contest the hours spent by

Mr. Rothert of the ACLU, except for the one hour of his time claimed for the unsuccessful TRO hearing. Rothert Affidavit, Doc. #70-1, Tab B.)

*The number of hours billed by MTO is the result of over-lawyering and due to block billing it cannot be determined what fees were reasonable.*

Over-lawyering

Mindful that nothing succeeds like success, County is hesitant to criticize too much the amount of hours claimed by MTO as the result of over-lawyering the case. That said, MTO claims to have worked 832.1 hours on the case, billing for 690.2 of them. Affidavit of Grant Davis-Denny, paragraph 16 (Doc. #70-3). Even with Mr. Davis-Denny's commendable exercise of billing discretion, such amount of time equates to billing for approximately *86* eight-hour days of labor for a case involving a hearing of one day. See *Dorr v. Webb*, 741 F.Supp.2d 1022, 1034 (N.D. Iowa 2010) (holding that more than 500 hours of attorney and paralegal time was "extraordinary in light of the six-hour case that was tried.)

The Court will recall, and the billing records reveal, that four attorneys traveled to St. Louis and attended the hearing for a preliminary injunction. Stocking counsel table with that many attorneys was excessive and unreasonable. Allowing that there were two defendants (each representing solely by one attorney), County suggests that it would have been more reasonable for there to have been only two attorneys for Plaintiff, and that two additional attorneys represents over-lawyering. This is not to say that a greater number of attorneys should not have been involved with working up the case. However, it appears that MTO determined to give its younger attorneys the chance to gain court room experience in this case. It is doubtful that paying clients would have put up with having

to pay fees and costs for training associates when a well-experienced partner was present and available to conduct the hearing. The Court should not award fees and travel-related costs for extra attorneys whose presence was not needed.

The over-lawyering practiced by MTO is particularly exemplified by the hours spent by Ms. Degtyareva and Mr. Davis-Denny on September 5, 7, 8 and 16th on the motion to sequester witnesses. One would have thought that simply standing up and asking the Court to sequester the witnesses, taking perhaps thirty seconds, would have sufficed for the purpose. Conceding that practice in federal court generally requires written support for motions, it is not credible that a large law firm such as MTO would not have a stock memo available for use.

Also very unreasonable as a legal charge is the 7.4 hours of time (and $3,626) spent by Mr. Clancy on "review Ferguson news stories." That may have made interesting reading, but the Court should not conclude that it furthered Plaintiff's case. The evidence presented, judicially noticed, was highly cumulative and added little to what was presented as live testimony or as part of filed declarations. It is typical of the over-lawyering conducted by MTO.

Block billing

It is difficult to assess how much over-lawyering occurred because of MTO's practice of block billing its hours. While block billing is not prohibited in the Eighth Circuit, *Shields-Roper v. City of Manchester*, 2010 WL 4628202 (E.D.Mo.), block billing prevents the Court from exercising meaningful review and determining how much time spent by legal professionals was unneeded. *Hensley*, at U.S. 433. For instance, on August 22, 2014 Mr. Clancy recorded a total of 10.3 hours of time, which included an

unspecified amount of time for drafting the memorandum in support of the preliminary injunction. It appears that not less than nine other line items include hours for working on the memorandum. Mr. Davis-Denny avers that it is good practice to have multiple attorneys working on the various components of the memo, but with the block billing, it is impossible to know just how many hours were actually spent on the memo, and whether all of them were reasonable.

Another example of confusing block billing is the hours claimed for preparing and filing motions for judicial notice and extension of the number of pages for a memorandum. On August 24, 2014 Mr. Clancy spent an unspecified amount of hours of a 14.0 hour day drafting and reviewing the requests for judicial notice and for extension of pages. He did the same during at least part of the following day (August 25, 2014) of 14.1 hours. Also on August 25, 2015, Mr. Rehn spent some of the 7.4 hour day he billed for drafting the request for judicial notice. Potentially, then, up to 35.5 hours were spent preparing the two documents. Examination of the documents permits the conclusion that they are relatively simple and would not merit 35.5 hours of time. While County does not argue that all 35.5 hours were spent on these tasks, it is impossible to glean how much time was reasonably spent.

Four line items, also block billed, include hours for researching *Monell* liability issues. Potentially, twenty-five hours were spent on that task, although concededly probably less. That much time spent researching a fairly basic concept of Sec. 1983 jurisprudence would seem unreasonable, but due to block billing, the Court cannot hazard a guess as to how many hours are justifiable.

County will concede that for the most part, the various activities for which time was billed appear to be generally reasonable legal tasks for the prosecution of a lawsuit. However, due to the largely block billed entries, County cannot, with focus, grasp how much of MTO's time spent on reasonable tasks was itself reasonable. Neither can the Court determine with precision the extent to which hours claimed by MTO on reasonable tasks were over-the-line.

County suggests that due to the over-lawyering of the case, and the uncertainty of the reasonableness of the hours engendered by block billing, at least a fifty percent total reduction in the amount of hours billed is appropriate.

*Plaintiff fails to demonstrate why the Court should award fees based on the hourly rate of a large Los Angeles law firm.*

The Court should not accept at face value Plaintiff's assertions that he had little choice but to seek legal assistance from a large and out-of-town, or extra-jurisdictional, law firm. That assertion is based on two concepts offered by Mr. Rothert in his affidavit (Doc. #70-1): one, that his office was unable to handle the case due to the vigorous defense contemplated by Defendants that only a larger office could handle it; and second, that no local law firm would accept the case due to conflicts of interest or to not wanting to get on the wrong side of State and County government.

With regard to the vigor of the defense, one would not think this would have dissuaded the ACLU legal team from handling the case itself. Do not other parties sued by ACLU put up vigorous defenses? The Court doubtless is familiar with ACLU's strong record of success in cases involving vigorous defenses.

With regard to the second offered ground, Plaintiff has not adequately explained why he had to engage an extra-jurisdictional law firm, and more important, why the extra-jurisdictional law firm must receive fees based on its own locality's rates, rather than St. Louis area rates. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159-1160 (8th Cir. 2014) instructs that "In a case where the plaintiff does not use local counsel, the district court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case." Plaintiff has simply not made the predicate showing. The Court is well-familiar with a number of skilled civil rights attorneys in the area, and it is more likely than not that any number of them would have been willing to accept the assignment had it been offered to them. In *Avalon Cinema Corp. v. Thompson*, 689, F.2d 137, 141 (8th Cir. 1982), Judge Arnold observed that "There are a number of lawyers who will cheerfully attack the 'establishment' for a reasonable fee, or in some cases, no fee at all." Judge Arnold considered this "one of the glories of the bar" and would decry that the day has finally come "when a civil-rights plaintiff must go out of state to get representation."

Additionally, it cannot be determined from Mr. Rothert's affidavit which local law firms were consulted, or whether he made a fair assessment of the impossibility of retaining adequate local law firms. The Affidavit of Richard B. Scherrer (Doc. #70-2) is unhelpful in that regard. Mr. Scherrer's averments indicate no knowledge of which firms were consulted and which demurred to represent Plaintiff. His affidavit expresses nothing but personal opinions and does not even reference a discussion of possible representation by his own law firm. The Court should give the affidavit little weight. To the contrary, most of the larger law firms in the area tout their civic-mindedness and pro

bono work. Consulting Mr. Scherrer's own law firm's website reveals that his certainly does. County cannot agree with the conclusion that no area mid to large-size law firms would be able to accept Plaintiff's case. Neither should the Court, with no specific examples of demurrers from such law firms evidenced by Plaintiff.

Further, assuming the need to seek extra-jurisdictional legal representation, *Snider* should not be read as giving plaintiffs free reign, once local options have been exhausted, to go around the country and choose any law firm they please, without regard to the reasonableness of the plaintiff's choice. County suggests that the Court be guided by the two-step inquiry described by the court in *Newport News Shipbuilding and Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009): "First, tribunals should ask if extra-judicial counsel rendered services that were truly available in the visited market. *Second, tribunals should ask if the party that hired extra-judicial attorney chose reasonably, or whether they chose an unnecessarily expensive attorney* (emphasis added)." A very similar approach was taken by the Seventh Circuit in *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir. 1982) ("Are services of a like quality truly available in the locality where the services are rendered; and did the party choosing the attorney from elsewhere act reasonably in making that choice?") As already noted, the Court (and County), not having been provided with hard facts, is forced to accept at face value Mr. Rothert's averments about the availability of local counsel. However, it is not at all apparent that Plaintiff acted reasonably in engaging MTO. County asks the Court to pay special attention to the last sentence of Paragraph 9 of the Rothert affidavit. Mr. Rothert averred that a First Amendment attorney at the national ACLU office recommended MTO as ready to take the case, and that MTO "had previously reached out to offer assistance on

Ferguson-related issues." It appears, then, that after St. Louis-area counsel were ruled out, MTO basically self-selected with its offer of assistance. In making this statement, County does not suggest that MTO improperly solicited business. What County suggests, though, is that with MTO having sought involvement in the case, Mr. Rothert considered no other out-of-area law firms for the job. The Court should not find that the selection of MTO was reasonable, at least not so as to award Plaintiff its Los Angeles large law firm rates. County suggests that very fine law firms nearer than Southern California could easily have been found, had they been looked for, ones which charge no more than Mr. Rothert's rate of $350 per hour, and ones which would have come with less travel time and expenses. County suggests that Mr. Rothert's rate should be used to calculate the lodestar amount to be awarded Plaintiff.

*Costs for expenses of fact witnesses*

Finally, County objects to the amount of $2,301.16 as expenses for the travel and lodging of fact witnesses (Doc. 70-3; page 34 of 95). County suggests that hundreds of persons who reside in the St. Louis area were present at the Ferguson protests which are the subject of the lawsuit, and there was no reason it was necessary to use witnesses from out-of-town. Requiring Defendants to pay for the expenses of out-of-town witnesses would seem to border on the punitive.

        Respectfully submitted,

        COUNTY COUNSELOR
        PETER J. KRANE

By:       /s/ Michael A. Shuman
        Michael A. Shuman #MO32418
        Associate County Counselor
        Lawrence K. Roos Bldg.
        41 So. Central Avenue

Clayton, MO. 63105  
314-615-7042; Fax 314-615-3732  
Mshuman@stlouisco.com

A copy of the foregoing was electronically filed with the Eastern District of Missouri's CM/ECF on February 27, 2015.

_____/s/ Michael A. Shuman