UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MUSTAFA ABDULLAH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Cause No. 4:14CV1436 CDP |
| | ) |
| COUNTY OF ST. LOUIS, MISSOURI, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT REPLOGLE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

Defendant Ronald K. Replogle, by and through counsel, hereby submits this Memorandum in Opposition to Plaintiffs' Motion for Attorneys' Fees and Expenses ("Plaintiff's Submission[1]").

## Factual Background

Plaintiff Abdullah filed his Complaint in the instant cause on August 18, 2014. (#1). On that same day, Plaintiff filed his Motion for Temporary Restraining Order and Memorandum in Support. (#'s 3,4). The Court denied that motion after a short hearing. (# 8). On or about August 26, 2014,

Plaintiff filed his Motion for Preliminary Injunction and Memorandum in Support. (#'s 14,15). On September 5, 2014, the Court held a scheduling conference at which the Court set the hearing on the preliminary injunction motion on September 29, 2014. (#34). On September 29, 2014, the hearing commenced. Four attorneys represented Plaintiff at hearing. Each Defendant was represented by one attorney. Plaintiff presented seven witnesses, and each Defendant presented two witnesses. The hearing concluded that same day. The parties engaged in no further briefing with regard to the motion. The Court entered its order granting a preliminary injunction on October 6, 2014. (# 51). On December 19, 2014, the parties filed their Joint Stipulation and Proposed Order regarding the Entry of a Permanent Injunction. (#64). On December 22, 2014, the Court entered its order granting the injunction agreed to by the parties. (#67).

On January 30, 2015, Plaintiff filed his Motion for Attorneys' Fees and Expenses seeking attorney's fees of $362,964.00 based upon 690 hours of billed time and itemized expenses of $18,822.59. (#69).

---

[1] Plaintiffs' motion refers to "Plaintiffs" rather than "Plaintiff". As the events relevant to this motion occurred prior to the addition of the Plaintiffs other than Mr. Abdullah, and for ease of composition, this memorandum will refer to "Plaintiff". In addition, as per Plaintiff's submission, Munger, Tolles & Olson LLP will be referred to

# ARGUMENT

## A.      Introduction

42 U.S.C. §1988 authorizes district courts to award a reasonable attorneys' fee to prevailing parties in civil rights litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate. *Id.* at 433. Thus, this Court must undertake a two-part inquiry to determine whether the fee requested by Plaintiff is reasonable: (1) whether the number of hours Plaintiff's attorneys expended is reasonable; and (2) whether the rates charged by Plaintiff's attorneys are reasonable. *Id.* Plaintiff bears the burden of establishing entitlement to the award and documenting the appropriate hours expended and hourly rates. *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002); *Planned Parenthood Minnesota v. Rounds*, 2006 WL 1889163, *1 (D. Minn. 2006). In the instant case, that inquiry leads to the inescapable conclusion that Plaintiff's request with regard to both rates and the hours expended is excessive. Accordingly, the Court should significantly reduce Plaintiff's request as per the analysis below.

---

as "MTO".

**B.     The Court should apply St. Louis hourly rates.**

The Court should apply St. Louis market rates rather than Los Angeles market rates in determining the proper fee award as the limited search conducted by the ACLU's counsel does not justify hiring a firm from one of the most expensive markets in the country, resulting in rates for both a partner and young associates far in excess of rates established by Eighth Circuit precedent for local practitioners experienced in civil rights litigation. Under Eighth Circuit precedent, the reasonable hourly rate is the prevailing market rate, that is the ordinary rate for similar work in the community where the case has been litigated, in this case the City of St. Louis. *Snider v. City of Cape Girardeau,* 752 F.3d 1149, 1159-1160 (8th Cir. 2014); *Little Rock School Dist. v. Arkansas* 674 F.3d 990, 995 (8th Cir. 2012). Plaintiff does not contest this principle, but rather in order to justify the exorbitant rates he seeks, relies on language in *Snider* stating that "where the plaintiff does not use local counsel, the district court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case." *Snider*, 752 F.3d at 1159-1160. Plaintiff and his counsel's efforts in this regard do not pass that test, and the Court should accordingly apply St. Louis rates.

First, the language in *Snider* that Plaintiff relies upon does not apply on its face. Plaintiff in fact retained local counsel, namely Mr. Rothert and

Mr. Doty of the ACLU, along with Gillian Wilcox of the Kansas City office of the ACLU. Those attorneys' entry of appearance leads to the reasonable inference that they indicated to Plaintiff that they were willing and able to take the case. Plaintiff made no subsequent efforts to obtain other counsel. Rather, Plaintiff's submission seeks to justify Los Angeles rates based upon Mr. Rothert's determination that Plaintiff's current counsel could no longer represent him because the case would present complex factual and legal issues and that the Defendants indicated that they would mount an aggressive defense. (#70-1, p. 4).

Thus, Plaintiff has submitted no evidence that Plaintiff could not obtain local counsel, that Plaintiff believed that local counsel could not capably represent him, or that he was opposed to obtaining local counsel in any way. Rather, this was entirely Mr. Rothert's decision. Accordingly, the language in *Snider* does not apply here and this Court must decide if counsel may step into the Plaintiff's shoes in this regard after initially taking the case, resulting in the retention of other counsel at dramatically higher rates.

However, even if the Court permits Mr. Rothert to step into Plaintiff's shoes in this regard, Mr. Rothert's determination that Plaintiff's counsel could no longer represent him because the case would present complex factual and legal issues and that the Defendants indicated that they would mount an aggressive defense does not support the conclusion that Plaintiff

required additional counsel, from outside the St. Louis area or otherwise. First, the fact that Mr. Rothert would be surprised that Defendants would mount an aggressive defense rather than presenting a perfunctory defense and following up with a quick surrender seems, at best, a curious assumption.

More importantly, the case was not complex factually and it is simply not credible to assert otherwise. The testimony largely described short, simple interactions between police and citizens which are routinely litigated in courts on almost a daily basis. Further, there was no discovery to obtain, produce, or analyze. Thus, even if the case had factual complexity, it would have no bearing on Plaintiff's fee submission because the fact finding available to the parties was limited to eliciting testimony in a one day hearing. Also, for the reasons stated in pages 12-15 below, Plaintiff's counsel's own billing records confirm the factual simplicity of the case. Thus, the factual complexity of the case does not justify Mr. Rothert's decision to obtain the services of a large, national law firm.

In addition, Plaintiff's counsel's search was not sufficiently diligent as it unduly restricted the search to "a large law firm with previous expertise in First Amendment litigation, as only a large firm would be able to quickly commit the resources necessary to effectively secure preliminary or permanent relief in a timely manner." (#70-1, p. 3).

Mr. Rothert's assertion that only a large firm could mount the resources necessary to secure preliminary or permanent relief is an assumption that does not survive examination. The Eighth Circuit has noted that "there are a number of lawyers who will cheerfully attack the "establishment for a reasonable fee, or in some cases, no fee at all." *Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 141 (8th Cir. 1982). The 10th Circuit has stated that in every major metropolitan area there are a substantial number of lawyers who possess the skill to handle all but the most unusual civil rights case and that civil rights litigation has become a common specialty. *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir. 1983).

Further, this Court's own files dispute Mr. Rothert's assumption. On December 8, 2014, Alexis Templeton and 6 other plaintiffs filed their Complaint in this Court seeking temporary, preliminary and permanent injunctive relief arising out of events in Ferguson. *Templeton, et al. v. Dotson, et al.*, cause number 4:14CV02019CEJ, (#1)[2]. The Complaint listed several attorneys representing plaintiffs in that case, none of whom, upon information and belief, work for large national law firms, and the plaintiffs in that case obtained some temporary relief within five days of filing their Complaint. *Id.* at #12. It is also noteworthy that on November 24, 2014,

---

[2] The Court may take judicial notice of its own files. *Downing v. Riceland Foods, Inc.* 298 F.R.D. 587, n.2 (E.D.Mo. 2014).

Defendants' counsel received an email from Stephen Ryals, an experienced local civil rights attorney[3], who indicated he was contemplating seeking injunctive relief out of Ferguson related matters. Affidavit of Robert J. Isaacson ("Isaacson affidavit"), (Exhibit 1 hereto, at ¶ 6, Exhibit 2 thereto). Thus, both precedent and other attorneys in the St. Louis area's activity reveal there is ample basis to believe that many attorneys in the area would have been willing to litigate issues arising out of the Ferguson situation and had the wherewithal to pursue and obtain temporary relief. Certainly with something beyond a bare modicum of effort, Mr. Rothert could have obtained local counsel who would have provided the necessary support rather than having to obtain counsel from one of the most expensive markets in the country, particularly in light of the prominence of the issues and the concomitant publicity which can help promote an attorney's practice. [4]

It is noteworthy that while Mr. Rothert asserted that he needed a large law firm with First Amendment experience, the First Amendment experience of the MTO lawyers in this regard appears to be limited. Plaintiff's

---

[3] See Exhibit 1 to Isaacson affidavit.

submission identified the Monger Tolles website. (#70-3, p. 3). An examination of that website, which is presumably designed to attract clients by identifying exhaustively experience and expertise which the firm's attorneys possess, does not reveal any First Amendment experience or expertise other than their participation in the instant case possessed by Mr. Rehn, Mr. Clancy, Ms. Degtyareva or Mr. Trujillo-Jamison. (Exhibit 2, attached). Attorney Davis-Denny has listed First Amendment expertise as part of the fifth bullet point in his list of key representations with his First Amendment experience apparently being primarily in the area of election law. *Id.* Plaintiff's affidavits also do not identify any First Amendment expertise on behalf of any of his lawyers. (#70-3, 70-4).

Moreover, the litigation tab of the practices and industries tab on that site appears to identify the firm's litigation specialties. (Exhibit 2) It does not identify either Constitutional Law or First Amendment law as an area of the firm's litigation expertise. *Id.* Further, the pro bono tab does not identify any particular areas of the firm's expertise and only identified one case involving First Amendment issues other than the instant case. *Id.*

---

[4] Defendant's counsel has contacted the Clerk's office and has been advised that there are more than 5,000 attorneys currently admitted to this Court. That number does not include approximately 1,000 attorneys who were admitted in September of 2014 who regrettably did not pay the dues required in February and have been temporarily removed, but presumably will be reinstated shortly. The Court may take judicial notice of these facts. *Downing,* 298 F.R.D. 587, n.2.

Even more telling, Mr. Rothert's affidavit does not detail how many firms in St. Louis he consulted regarding representing Plaintiff in this matter (#70-1, p. 3), but rather seems to rely primarily upon discussions with attorneys regarding other cases regarding other issues (#70-1, pp. 3-4). In sum, Plaintiff's search for counsel was not reasonably diligent and the Court should accordingly apply St. Louis rates in determining the fee award. *Snider,* 752 F.3d at 1159-1160.

In addition, Mr. Rothert's affidavit also does not identify any efforts to obtain counsel from less expensive markets. Rather he called a colleague at the ACLU national office who recommended MTO because they had the necessary resources and expertise and indicated an interest in performing the work. (#70-3, p.5). Again, this cannot constitute adequate diligence. *See, Newport News Shipbuilding and Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009)("tribunals should ask if the party that hired the extra-judicial attorney chose reasonably, or whether they chose an unnecessarily expensive attorney. ) *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 769 (7th Cir. 1982)("did the party choosing the attorney from elsewhere act reasonably in making that choice").

Eighth Circuit precedent provides sufficient guidance to arrive at the appropriate St. Louis market rate. *Snider,* 752 F.3d at 1159-1160. The *Snider* case established the reasonable rate for an experienced attorney conducting

First Amendment litigation at $300 per hour for Mr. Rothert, and for an

inexperienced attorney at $225 per hour. *Id.* Those are rates that were sought

by Mr. Rothert and Mr. Doty in that case. (Exhibit 3 hereto).[5] Curiously,

Plaintiff does not mention that case in his submission, or the two cases Mr.

Rothert cited in his submission in *Snider* which held that $300 per hour was

an appropriate fee for Mr. Rothert,[6] even with regard to the fees sought for

Mr. Rothert, and does not explain why he is now seeking $350 an hour for

Mr. Rothert's work in the instant case.[7] *Id.* Consequently, the Court should

award Mr. Davis-Denney and Mr. Rothert $300 an hour for hours reasonably

expended and award the remaining attorneys in the case $225 an hour for

hours reasonably expended.[8]  In addition, this Court has approved a rate of

$90 per hour for paralegal services, which should apply here. *Holland v. City*

*of Gerald, Mo.,* 2013 WL 1688300 (E.D.Mo.).

### C.    Hours not reasonably expended

The Court should exclude a substantial number of hours sought for

---

[5] Exhibit 3 is the Plaintiff's Motion for Attorneys' Fees and Costs and supporting
materials in the *Snider* case. The Court may take judicial notice of these materials.
*Downing,* 298 F.R.D. 587, n.2.

[6] *Stahl v. City of St. Louis, Mo.,* No. 10-3761 (8th Cir. 2012)*; Gieselman v. Jackson*,
4:10CV1619 JAR (E.D.Mo. 2012).

[7] As per the bureau of labor statistics inflation calculator, based upon inflation, the $300
Mr. Rothert received in 2013 should be increased to $300.97 and the $225 per hour Mr.
Doty received should be 225.72.

payment by Plaintiff as Plaintiff's counsel used too many lawyers at hearing and billed excessive hours to the case. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary. *Hensley*, 461 U.S. at 434. The district court should also exclude from this initial fee calculation hours that were not reasonably expended. *Id.* In the instant case, the issue is made significantly harder as the virtually all of the MTO billing sheets do not describe how long any particular activity took, but rather combined activities into a daily billing for each attorney, which can justify a reduction in Plaintiff's hourly request, *Welch v. Metropolitan Life Ins. Co.* 480 F.3d 942, 945, n.2 (9th Cir. 2007).

First, as noted above, the case was not complex factually as it involved witnesses describing simple interactions between police and citizens which are the type of fact patterns which are routinely litigated in many courts. Furthermore, there was no discovery in the case at all.

In addition, Plaintiff's billing records refute Plaintiff's assertions that the case was factually complex. More specifically, citing paragraph 22 of Mr. Davis-Denny's affidavit, Plaintiff asserts that "in response to Defendants' contradictory explanations for what was happening on the ground, Plaintiff

---

[8] A substantial portion of Plaintiff's supporting documentation supports the assertion that the MTO rates are reasonable for the Los Angeles market. Defendants are not disputing

12

Abdullah's attorneys were forced to expend significant time unearthing the facts." (#70, p. 17). Paragraph 22 of Mr. Davis Denny's affidavit does not describe Plaintiff's counsel's efforts to unearth the facts at all, but rather describes staffing. Plaintiff presumably intended to cite paragraph 20 of that same document, as it is the sole paragraph in the affidavit which discussed fact gathering.

However, paragraph 20 merely states in conclusory fashion that the case involved "extensive factual investigation to locate protestors who had been affected by the policy." (#70-3, p. 7). MTO's billing records do not support that assertion. Those records do not identify any time expended by Mr. Rehn to locate protestors, either directly or indirectly. (#70-3, Exhibit B). Those records only identify one such date for Mr. Davis-Denny, namely September 8, 2014, where he sent an email regarding potential witnesses which took 3/10 of an hour. *Id.* Those records only identify two dates where Mr. Clancy spent time in this regard, first on August 22, 2014, where he had a conference call with Plaintiff and reached out to potential declarants for an unknown period of time as one of six tasks performed on that day that took 11.3 hours, and on August 23, 2014, when he interviewed one declarant for an unknown period of time as part of 12.3 hours of work which included drafting a declaration and revising the memorandum in support of the

that point, but for the reasons stated above, it is irrelevant.

motion for preliminary injunction. (#70-3). *Id.*

Similarly, those records identify only one date where Mr. Trujillo-Jamison spent time in this regard, namely on August 22, 2014, where he participated in a conference call with a potential witness for an unknown period of time. That activity was one of four activities he billed that day for a total of 3.8 hours. *Id.*

The records seem to indicate that Ms. Degtyareva performed the lion's share of the work in this regard, but the records also show that work was not extensive. The records indicate that Ms. Degtyareva spent time in this regard on eight days. On August 22, 2014, Ms. Degtyareva interviewed one witness for a potential declaration which was one of seven tasks that took 9.1 hours. On August 23, 2014 Ms. Degtyareva interviewed that same witness for a potential declaration as one of six tasks that took 6.5 hours. On September 4, 2014, Ms. Degtyareva interviewed another witness and attempted to locate additional witnesses which were two of five tasks which took 2.3 hours. On September 5, 2014, Ms. Degtyareva attempted to locate additional witnesses for an unknown period of time as one of four tasks which took 1 hour. Similarly, on September 8, 2014, Ms. Degtyareva also attempted to locate additional witnesses for the hearing for an unknown period of time which was one of four tasks which took 2.1 hours. On September 9, 2014, Ms. Degtyareva again sought to find additional witnesses for 9/10 of an hour.

Lastly, on September 11, 2014, Ms. Degtyareva interviewed two witnesses regarding their protests for an unknown period of time as two of three tasks that took 3.9 hours. *Id.*

In sum, the billing records eviscerate the notion that the case was a factually complex one and that Plaintiff's counsel conducted "extensive factual investigation to locate protestors who had been affected by the policy." In fact, only one of Plaintiff's counsel engaged in such activity to a significant degree and even given the most generous of assumptions that activity took less than 15 hours.

Consequently, given the relative factual simplicity of the case, the presence of four attorneys at hearing was excessive. The hearing took only one day. Plaintiff presented 7 witnesses and Defendants presented four witnesses, none of whom took a particularly long period of time on the witness stand. Further, as no discovery had taken place in the case, preparation that could be done for each witness was limited. Solo practitioners present several witnesses at trial in a day routinely in federal courts. In fact, each Defendant was represented at hearing by one attorney. Consequently, Plaintiff's use of four attorneys at hearing was excessive and the Court should not award fees for more than two of Plaintiff's attorneys at hearing. See *Snider,* 752 F.3d at 1159-1160 (8th Cir. 2014)(Court affirmed fees for two attorneys at bench trial).

Nonetheless, Plaintiffs submission attempts to justify the use of four attorneys at hearing by asserting that "the attorneys largely performed independent tasks." That assertion certainly does not describe the redundancy of four attorneys traveling and observing other attorneys examining witnesses at hearing, which constituted a substantial number of hours.[9]  Furthermore, given that there were three weeks between the filing of the motion for the preliminary injunction and the hearing, two attorneys would have had more than enough time to prepare and present the evidence at hearing. Consequently, the Court should reduce Plaintiff's request by approximately 60 hours.[10]

The Court should also reduce Plaintiff's request as the amount of time editing documents was excessive. While Defendants do not disagree with Plaintiff's assertion that having a document reviewed by a second set of eyes is standard practice, and therefore reasonable, the billing records establish that in some cases, more than two attorneys were reviewing a document,

---

[9] Defendant is not opposed to the common practice of firms using pro bono work to allow associates in their initial years of practice to obtain courtroom experience, which was probably a substantial part of what was occurring in the instant case, but that does not permit the increased costs arising out of that practice to be deemed reasonable.

[10] Given the ambiguity caused by the MTO billing records, this figure was arrived at by eliminating the hours associated for traveling to and appearing at hearing for each associate other than Ms. Degtyareva, as Ms. Degtyareva appeared to do the most investigative work and would have been the most efficient choice to bring to hearing. Defendant's calculation did not deduct the time spent by those attorneys prior to the hearing date which would presumably have been performed by Ms. Degtyareva.

which is excessive, particularly in light of the strong academic credentials of the MTO lawyers. For instance, it appears that Mr. Davis-Denny, Mr. Trujillo-Jamison, Mr. Clancy, and Ms. Degtyareva all spent time revising the Memorandum in Support of the Motion for Preliminary Injunction. In addition, each of those four attorneys also participated in drafting and revising the Reply Memorandum in Support of their Motion for Preliminary Injunction. Again, it is also difficult to discern with precision the hours actually spent on drafting as the drafting time is not set out in a substantial majority of the time entries. (#70-3, Exhibit B).

Despite the lack of specificity in MTO's billing, the excessive nature of the time spent by MTO can be discerned by an examination of two other cases in this Court, which are described below.

1. ***Snider v. City of Cape Girardeau***

This case involved a 1983 action alleging that the plaintiff's arrest for violating the Missouri statute prohibiting flag desecration violated his constitutional rights. *Snider,* 752 F.3d at 1149. The plaintiff was represented in the case by Mr. Rothert and Mr. Doty. *Id.* The Court found both the arrest and the statute at issue to be unconstitutional and entered a permanent injunction in plaintiff's favor, and after a bench trial, awarded damages. *Id.* On January 2, 2013, the plaintiff filed a motion for attorneys' fees and

memorandum in support, along with supporting documentation. (Exhibit 3).[11]

Mr. Rothert sought $300 an hour for his services and $225 per hour for Mr.

Doty, who had five years of legal experience at the time. More importantly,

Mr. Rothert sought payment for approximately 143 total hours of attorney

time. The parties in that case in addition to filing initial pleadings conducted

discovery, filed cross-motions for summary judgment, and had a bench trial

with regard to damages in a case that lasted over two years. Mr. Rothert in

that case filed fourteen briefs of various lengths addressing legal issues in the

case. Nonetheless, Mr. Rothert's attorneys' fee submission sought payment

for approximately <u>20</u> percent of the time sought by MTO in the instant case,

where MTO filed only two briefs of significance, conducted no discovery, and

participated in a one day hearing on a case that essentially concluded within

five months of filing.

   2. ***Rohrbough v. Hall, et al.***

       The plaintiff in this case filed a 1983 action against two St. Louis police

officers and the Board of Police Commissioners arising out of an alleged use

of excessive force.  *Rohrbough v. Hall, et al.,* 4:07CV996 ERW. In addition, to

the initial pleadings, the parties conducted discovery, Defendants filed for

summary judgment, and took a qualified immunity appeal. The case went to

---

       [11] As noted, the Court may take judicial notice of this file. *Downing,* 298 F.R.D.
587, n.2.

trial and resulted in a mistrial on the fifth day. The parties tried the case again and the jury found against one of the officers and in favor of one of the officers and the Board of Police Commissioners. Nonetheless, the plaintiff, who was represented by two attorneys at trial, sought payment for 571 hours of attorney time.[12] (Exhibit 1 hereto, Exhibit 1 thereto); *Rohrbough v. Hall*, 586 F. 582 (8th Cir. 2009). Again, this case shows the excessiveness of Plaintiff's request. The plaintiff in *Rohrbough* conducted discovery, responded to a dispositive motion, defended an appeal, and conducted two trials which took approximately 9 days in the same amount of time Plaintiff's counsel filed two briefs, conducted limited investigation, did not conduct any discovery, and conducted a one day hearing.

In sum, these two cases, brought by two experienced civil rights attorneys, show the excessiveness of the hours claimed by Plaintiff in the instant case. See also *Dorr v. Webb*, 741 F.Supp.2d 1022, 1034 (N.D. Iowa 2010)(holding that more than 500 hours of attorney and paralegal time was extraordinary in light of the six hour case that was tried). Accordingly, the Court should limit the hours awarded in the instant case to approximately 150 to 200 hours, which is similar to the *Snider* case. The similarities

---

[12] The Court may take judicial notice of these materials. *Downing,* 298 F.R.D. 587, n.2. Plaintiff's counsel in that case deducted 20% of their fees because they did not prevail against the Board. If they had not made that deduction, they would have billed 713 hours, which only slightly exceeds what Plaintiff seeks here.

between the *Snider* case and the instant case, along with the vagueness of the MTO billing, compel that conclusion.

The cases cited by Plaintiff with regard to hours expended do not help Plaintiff in this regard. First, with regard to *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,* 2006 U.S. Dist. Lexis 95610, the Plaintiff did not submit the relevant billing records so this Court does not have anything approaching a complete history of the litigation, but the submitted materials do reveal that the litigation took approximately two years, involved a motion for preliminary injunction, cross-motions for summary judgment, and an appeal. It is not clear from Plaintiff's submission the extent to which the parties conducted discovery, but it seems unlikely given the length of the case that the parties would not have engaged in discovery. Thus, the length and breadth of that litigation is not remotely comparable to the instant case.

Plaintiff's reliance on *Fitzgerald v. City of Los Angeles,* 03-1876 DDP (C.D. Cal. Apr. 7, 2009) is also unavailing. Initially, while again Plaintiff did not provide the billing records submitted by the plaintiff's counsel in the case, the case's initial procedural history had some similarities to the instant case, as the Court granted a temporary restraining order and preliminary injunction relatively early in the case and the parties then came to a settlement. As part of that settlement, the parties agreed to payment of

attorneys' fees in the amount of $94,720 based upon California rates. Given that the fees sought were from $240 to $710 per hour, it seems clear that the plaintiff's counsel expended in the range of about 180 hours, or approximately 25% of the hours Plaintiff seeks here. However, the instant case and *Fitzgerald* diverge at that point. The plaintiffs in *Fitzgerald* sought to extend the injunction almost three year later. This resulted in significant further motion practice and plaintiffs' counsel in that case also spent 170 hours interviewing and collecting approximately 40 declarations of skid row residents. In sum, while the first part of the *Fitzgerald* litigation does provide guidance, the remainder does not and consequently the Court should find that MTO reasonably expended between 150 and 200 hours.

## CONCLUSION

For the foregoing reasons, Defendant Ronald K. Replogle respectfully requests that the Court award Plaintiffs' attorneys fees based upon St. Louis rates, award no more than 200 hours of attorney time, and grant any further relief the Court deems just and proper.

Respectfully submitted,

**CHRIS KOSTER**
Missouri Attorney General

*/s/Robert J. Isaacson*
James R. Layton #45631
Robert J. Isaacson, #38361
Assistant Attorney General
P.O. Box 861
St. Louis, Missouri  63188
(314) 340-7861 (Telephone)
(314) 340-7029 (Facsimile)
*Attorney for Defendant Replogle*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served

via the courts CM/ECF system, this 2nd day of March, 2015, to:

Anthony E. Rothert
Grant R. Doty
American Civil Liberties Union of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
arothert@aclu-mo.org
gdoty@aclu-mo.org

Gillian R. Wilcox
American Civil Liberties Union of Missouri Foundation
3601 Main Street
Kansas City, Missouri 64111
gwilcox@aclu-mo.org


Kenneth Michael Trujillo-Jamison
Thomas P. Clancy
Thane M. Rehn
Grant A. Davis-Denny
Victoria A. Degtyareva
Munger, Tolles & Olson LLP
355 South Grand Avenue
35th Floor
Los Angeles, California 90071
Kenneth.Trujillo-Jamison@mto.com
Thomas.Clancy@mto.com
Nathan.Rehn@mto.com
Grant.Davis-Denny@mto.com
Victoria.Degtyareva@mto.com
*Attorneys for Plaintiff*


Michael A. Shuman
Associate County Counselor
St. Louis County Counselor's Office
Lawrence K. Roos Building
41 So. Central Avenue
Clayton, Missouri 63105
mshuman@stlouisco.com
*Attorney for Defendant St. Louis County, Missouri*


*/s/ Robert J. Isaacson*
Robert J. Isaacson
Assistant Attorney General