IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MUSTAFA ABDULLAH, et al., | ) |
| | ) |
| Plaintiffs, | ) CASE NO. 4:14-cv-1436 CDP |
| | ) |
| v. | ) |
| | ) |
| COUNTY OF SAINT LOUIS, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

# TABLE OF CONTENTS

**Page**

I.    Introduction ........................................................................................................ 1

II.   The Claimed Hourly Rates Are Reasonable ...................................................... 2

     A.    Munger Tolles Attorneys Should Be Paid At Their Customary Los Angeles Rates ............................................................................................. 2

     B.    Mr. Rothert's Requested Rate Is Reasonable. ........................................... 7

III.  Plaintiff's Attorneys Expended A Reasonable Number Of Hours .................... 7

IV.   The Claimed Expenses Are Reasonable ........................................................... 14

V.    Conclusion ....................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,
   131 S.Ct. 2806 (2011) ...........................................................................................7

*Avalon Cinema Corp. v. Thompson*,
   689 F.2d 137 (8th Cir. 1982) ................................................................................4

*Casey v. City of Cabool, Mo.*,
   12 F.3d 799 (8th Cir. 1993) ................................................................................10

*Chrapliwy v. Uniroyal, Inc.*,
   670 F.2d 760 (7th Cir. 1982) ................................................................................6

*City of Riverside v. Rivera*,
   477 U.S. 561 (1986) .......................................................................................2, 10

*Dorr v. Webb*,
   741 F.Supp.2d 1022 (N.D. Iowa 2010) ..............................................................13

*Federal Election Commission v. Wisconsin Right to Life, Inc.*,
   551 U.S. 449 (2007) ..............................................................................................7

*Fitzgerald v. City of Los Angeles*,
   03-1876 DDP (C.D. Cal. Apr. 7, 2009)..........................................................13, 14

*Henson v. Columbus Bank & Trust Co.*,
   770 F.2d 1566 (11th Cir. 1985) ..........................................................................10

*Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*,
   553 F.3d 487 (7th Cir. 2009) ................................................................................6

*Lawson v. Kelly*,
   Case No. 14-0622-CV-W-ODS (W.D. Mo.) ..........................................................7

*Mathur v. Bd. of Trustees of S. Il. Univ.*,
   317 F.3d 738 (7th Cir. 2003) ............................................................................4, 5

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ..............................................................................8

*Nassar v. Jackson*,
   ---F.3d.---, 2015 WL 871766 (8th Cir. Mar. 3, 2015) .........................................14

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Nat'l Wildlife Fed'n v. Hanson,*
   859 F.2d 313 (4th Cir. 1988) ................................................................................ 6

*Newport News Shipbuilding and Dry Dock Co. v. Holiday,*
   591 F.3d 219 (4th Cir. 2009) ................................................................................ 6

*Phelps-Roper v. City of Manchester, Mo.,*
   No. 4:09CV1298 CDP, 2010 WL 4628202 (E.D. Mo. Nov. 8, 2010) .................................. 14

*Rodriguez-Hernandez v. Miranda-Velez,*
   132 F.3d 848 (1st Cir. 1998) ................................................................................ 12

*Snider v. City of Cape Girardeau,*
   752 F.3d 1149 (8th Cir. 2014) ....................................................................... 6, 7, 13

*White v. McKinley,*
   No. 05-0203-CV-W-NKL, 2009 WL 813372 (W.D. Mo. Mar. 26, 2009) ............................ 12

I.    **Introduction**

All parties agree that Plaintiff Mustafa Abdullah is a prevailing party in this action and is entitled to his reasonable fees and expenses.[1]  Defendants contest the rates and hours billed by Plaintiff's attorneys at Munger, Tolles & Olson LLP ("Munger Tolles").  However, Plaintiff was entitled to seek out-of-town counsel after diligent, good faith efforts failed to locate able and willing local counsel, and Munger Tolles expended a reasonable number of hours given the vigorous defenses put forth by both Defendants.

First, Plaintiff is entitled to recover fees at Munger Tolles' customary Los Angeles rate. Defendants claim that there are St. Louis attorneys capable of taking on this case.  No one denies that in the abstract.  But when faced with the exigent need for a firm capable of wading into a controversial litigation adverse to the State and the County, and delivering immediate relief for ongoing constitutional rights violations, Plaintiff could not find a local firm able and willing despite diligent, good faith efforts.  The law does not require Mr. Abdullah to delay his need for immediate relief from Defendants' unconstitutional policy while he scours the county looking for an able and willing law firm; it requires the type of diligent, good faith efforts that have been shown here.

Second, Munger Tolles' hours are reasonable in light of the legal and factual complexity of the issues in this case, the nature of the defenses put forth by Defendants, and the immediacy of the need for relief.  Defendants claim that Plaintiff has "over-lawyered" the case and seek drastic reductions—over 70 percent by the MSHP—in the hours claimed.  But Defendants' litigation tactics are directly responsible for the time expended by Munger Tolles.  For instance,

---

[1] Although this case later added other plaintiffs and defendants, this motion seeks to recover only Plaintiff Abdullah's attorneys' fees.

- 1 -

the MSHP initially argued that it had established an alternative Protester Assembly Zone ("PAZ"), and that the keep moving rule was really an attempt to move all protesters to the PAZ. When those assertions were rebuffed by fact-witness declarations, the MSHP and the County claimed that there was no keep moving policy at all, or in the alternative, that the keep moving policy was a product of enforcement of the Refusal to Disperse statute.  At the preliminary injunction hearing, the fact witnesses presented by Plaintiff, and even Defendants' own witnesses, contradicted Defendants' assertions, and this Court ultimately found for Plaintiff on all salient issues.  As the Supreme Court has stated, "[t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986) (plurality opinion) (internal quotation and citation omitted).  As such, Plaintiff's attorneys should be awarded their requested hours, which they reasonably expended in vindicating Mr. Abdullah's constitutional rights.

## II.   **The Claimed Hourly Rates Are Reasonable**

### A.   **Munger Tolles Attorneys Should Be Paid At Their Customary Los Angeles Rates**

Following the TRO hearing, Anthony Rothert, legal director of ACLU-Missouri, determined that ACLU-Missouri would need to seek outside counsel to effectively litigate Mr. Abdullah's case.  Defendants seize on two of Mr. Rothert's reasons for his decision—the complexity of the case and the aggressiveness of Defendants' tactics—and argue that ACLU-Missouri should expect aggressive defenses.  St. Louis County's Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs ("Cnty. Opp'n"), ECF No. 71 at 5; Defendant Replogle's Memorandum in Opposition to Plaintiffs' Motion for Attorneys' Fee and Expenses, ("MSHP Opp'n"), ECF No. 73 at 5-6.

But Defendants ignore Mr. Rothert's additional averment that ACLU-Missouri was "overwhelmed with a large number of other matters," and his recognition that Mr. Abdullah would need quick relief in light of the ongoing First Amendment violations in Ferguson. Rothert Affidavit, ECF No. 70-1 at ¶ 4. Based on the confluence of these factors—the case load of ACLU-Missouri, the need for prompt relief, the complexity of this case, and the aggressive posturing of Defendants—Mr. Rothert determined that Mr. Abdullah would need to seek immediate assistance from outside counsel.[2] Defendants have offered no evidence to rebut Mr. Rothert's affidavit and no reason to doubt the decision-making of the legal director of ACLU-Missouri that it needed to seek co-counsel in order to best meet the needs of its client.

Having made this decision, Mr. Rothert then attempted to obtain suitable local counsel. In this case, Mr. Rothert needed a law firm capable of devoting a large amount of resources towards Mr. Abdullah's immediate need for relief. Rothert Affidavit at ¶ 5. The affidavit of Richard B. Scherrer, a practicing attorney in St. Louis, confirms that these needs could likely be met only by a mid- or large-sized firm. Scherrer Affidavit, ECF No. 70-2, at 2. Several such firms had recently represented to Mr. Rothert that they would not take on cases adverse to the State. Rothert Affidavit at ¶ 6. The other local firms that Mr. Rothert contacted also declined to represent Mr. Abdullah for a variety of reasons including not wishing to be adverse to the State or the County, or due to the controversial nature of events in Ferguson at the time. *Id.* at ¶ 7. Mr. Scherrer stated that, in his professional opinion, it would be difficult to obtain a local firm of

---

[2] The MSHP argues that it was improper for ACLU-Missouri, rather than Plaintiff Abdullah, to determine that additional counsel was required. MSHP Opp'n at 5-6. However, Mr. Rothert, the legal director of ACLU-Missouri, was clearly better positioned than Mr. Abdullah, a Program Associate at ACLU-Missouri, to determine whether ACLU-Missouri could effectively serve Mr. Abdullah. To require Mr. Abdullah to make such a determination and then conduct a search for local counsel himself would unnecessarily burden potential civil rights plaintiffs.

requisite size and ability given Mr. Abdullah's immediate need, the identity of the defendants, and the nature of the controversy.  Scherrer Affidavit at 1-2.

While Defendants assert that many St. Louis attorneys could have represented Mr. Abdullah, they do not offer any affidavit evidence from a firm able and willing to take on this representation or even from a local attorney that would contradict Mr. Scherrer's professional opinion.  Instead, both Defendants cite to a 1982 case noting that "there are a number of lawyers who will cheerfully attack the 'establishment' . . . for a reasonable fee, . . . in some cases, no fee at all."  *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 141 (8th Cir. 1982).  Such a de-contextualized statement does not reflect the realities of this particular case.  Undoubtedly there exist St. Louis attorneys theoretically capable of representing Mr. Abdullah; indeed, Mr. Rothert's affidavit acknowledges that "there are firms in Missouri that have the expertise to take on a case like this one."  Rothert Affidavit at ¶ 8.  What Defendants ignore though, is that Mr. Rothert did not have the luxury to exhaustively canvas St. Louis for a firm that might eventually have had the willingness, capacity, and lack of conflicts to take on the representation.  Rather, in light of the ongoing First Amendment violations, Mr. Rothert needed to *immediately* find a firm that had the resources to prepare a motion for a preliminary injunction in an extremely short period of time.  *Id.* at ¶¶ 5, 8-9.

Moreover, to accept Defendants' position that the possibility of a local attorney willing to take on a case negates the ability for out-of-town attorneys to recover their market rates would significantly curtail civil rights representation.  The Seventh Circuit's decision in *Mathur v. Bd. of Trustees of S. Il. Univ.*, 317 F.3d 738 (7th Cir. 2003) is instructive.  There, the prevailing party had claimed that when searching for local counsel, the attorneys he found were either too inexperienced *or* had a conflict of interest.  The Seventh Circuit determined that such efforts

were sufficient to meet the standard of a good faith effort—the standard also at issue in this

case—despite the defendant identifying a local attorney who had recently brought a similar suit.

The Seventh Circuit reasoned:

> SIU claims that local counsel with sufficient expertise was
> available, pointing to an age discrimination case that was litigated
> against it by a local practitioner. While that may be true, a potential
> litigant's search for counsel need not be meticulously
> comprehensive before attorneys from other areas are considered.
> The realities of the legal community today mean that though some
> attorney probably could have represented Mathur, one factor or
> another prevented them from taking the case when he needed a
> lawyer. Local attorneys could be overwhelmed with their current
> caseloads and unable to take on a potentially protracted litigation.
> A client's case could present novel or untested legal theories which
> an attorney may not believe will be successful. The attorney may
> simply not believe that the prospective client has a winnable case
> or, as in Gusman, the case may be too complex and require more
> resources than local law firms are able to provide. *Whatever the
> search process a litigant uses to choose legal representation, a
> good-faith effort to find local counsel is all that is necessary, lest
> the meticulous generation of a comprehensive log of inquiries
> deter plaintiffs from bringing worthy discrimination suits,
> frustrating the rationale for statutes enabling private civil rights
> suits.*

*Id.* at 744 (emphasis added).  Similarly, Defendant MSHP's reference to a case (signed by *three*

*separate out-of-state attorneys*) filed 104 days after Plaintiff's Motion for  Preliminary

Injunction and a letter received from an attorney "contemplating seeking injunctive relief" sent

90 days after the Motion for Preliminary Injunction, MSHP Opp'n at 7, have no bearing on

whether Plaintiff made diligent, good faith efforts to obtain local counsel.

Plaintiff has shown that he made diligent, good faith efforts to obtain local counsel.

Ultimately those efforts failed, and Plaintiff sought the assistance of out-of-town counsel.[3]

---

[3] That Mr. Rothert takes seriously the decision to seek out-of-town cooperating counsel is
reflected in that this is only the second time in over 100 federal cases that he has done so.
Rothert Affidavit at ¶ 8.

Rothert Affidavit at ¶ 8.  Nothing more is required for Plaintiff to recover Munger Tolles'

customary Los Angeles rates.  *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159-60 (8th

Cir. 2014) ("Where the plaintiff does not use local counsel, the district court is not limited to the

local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was

unable to find local counsel able and willing to take the case.").

       Defendants attempt to graft additional requirements onto the *Snider* test that have not

been endorsed by this circuit.  Namely, Defendants cite *Newport News Shipbuilding and Dry

Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009) and *Chrapliwy v. Uniroyal, Inc.*, 670

F.2d 760, 769 (7th Cir. 1982) for the proposition that even if Plaintiff had to seek outside

counsel, they should have sought counsel from a less expensive market than Los Angeles.  Cnty.

Opp'n at 7; MSHP Opp'n at 10.  But the non-binding cases relied upon by Defendants do not

hold that parties are required to solicit bids and choose the lowest qualifying offer for

representation.  Rather, *Chrapilwy* and its progeny require only that parties act "reasonably" in

making their choice.  *Chrapliwy*, 670 F.2d at 769*; see also Nat'l Wildlife Fed'n v. Hanson,* 859

F.2d 313, 317 (4th Cir. 1988).[4]  Here, faced with a need to find counsel that could immediately

bring a motion for a preliminary injunction, Plaintiff Abdullah reasonably chose to engage

Munger Tolles, a firm with a proven track record of being able to handle complex, prominent,

and time-sensitive matters.[5]

---

[4] Indeed, under Seventh Circuit precedent, an attorney's billing rate, even if out of town, is
presumptively appropriate.  *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d
487, 490 (7th Cir. 2009) ("[O]ur cases have consistently recognized that an attorney's actual
billing rate for comparable work is presumptively appropriate for use as a market rate when
making a lodestar calculation.")

[5] The MSHP also argues that Munger Tolles did not have sufficient First Amendment
experience, MSHP Opp'n at 8-9, while curiously conceding that the lead partner from Munger
Tolles prominently displays a First Amendment case on his website biography.  *Id.* at 9.
(footnote continued)

Under clear Eighth Circuit precedent then, this Court should award Munger Tolles attorneys' Los Angeles rates, which Defendants concede are reasonable for Los Angeles.

**B.    Mr. Rothert's Requested Rate Is Reasonable.**

Mr. Rothert's billing rate is $350.00 an hour.  Rothert Affidavit at ¶ 12.  The MSHP argues that St. Louis rates should be based on the *Snider* case and calculated at $300 per hour. MSHP Opp'n at 10-11.  But *Snider* was evaluating rates for work done from 2010-2012 and is thus not relevant to the determination of a reasonable 2014 St. Louis rate.  *See* Exhibit 3 to Isaacson Decl., ECF No. 73-5 at 9, 17-22.  Mr. Rothert's clients have recently been awarded fees at his $350 an hour rate by both state and federal courts.  Rothert Affidavit at ¶ 12; *see, e.g. Lawson v. Kelly*, Case No. 14-0622-CV-W-ODS (W.D. Mo.), ECF No. 63 filed Dec. 8, 2014.[6] Thus, Mr. Rothert should be awarded his requested rate of $350.00 an hour.

**III.   Plaintiff's Attorneys Expended A Reasonable Number Of Hours**

In light of the legal and factual complexity of the issues in this case, the nature of the defenses put forth by Defendants, and the immediacy of the need for relief, Plaintiff's attorneys expended a reasonable number of hours.  Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses ("Plaintiffs' Memo"), ECF No. 70, at 12-15.  Moreover,

---

Published case law shows that the partner has litigated a First Amendment challenge to Arizona's Clean Elections Act in the Supreme Court.  *See Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S.Ct. 2806, 2813 (2011).  He also has represented members of Congress in the Supreme Court in responding to a First Amendment challenge to the Bipartisan Campaign Reform Act of 2002.  *See Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 454 (2007).

[6] The *Lawson* case awarded fees for Mr. Doty's work at a rate of $275 per hour.  In the event that this Court determines that Munger Tolles' rates are to be based on St. Louis rates, Plaintiff requests that Munger Tolles' associates be awarded the 2014 rate of $275 per hour rather than the 2012 rate of $225 suggested by the MSHP.

Plaintiff's attorneys exercised billing judgment and reduced the billable time claimed by 152

hours. *Id.* at 13 (citing Davis-Denny Affidavit, ECF No. 70-3, at ¶ 18; Rothert Affidavit at ¶ 10).

Defendants claim that Plaintiff "over-lawyered the case," Cnty. Opp'n at 1, and that

Plaintiff's hours are excessive, MSHP Opp'n at 3.[7] However, Defendants ignore that their own

vigorous strategies directly led to the hours incurred by Plaintiff's attorneys. Defendants initially

represented to the Court that they were requiring all the protesters to move to the PAZ. Hearing

Transcript on Temporary Restraining Order, Aug. 18, 2014, ECF No. 12 at 26:5-9, 26:18-25,

34:7-9, 35:1-6. Faced with ample fact witness declarations establishing that the PAZ was not

established at the time the MSHP claimed it had been and that protesters were not being directed

to the PAZ, Defendants switched tactics and argued that in fact there was no policy requiring

protesters to keep moving, and that they were simply enforcing the Refusal to Disperse statute.[8]

The MSHP further claimed that enforcement of the keep moving rule had ceased as of August

23, 2014. ECF No. 36 at 4-5. In support of the claim that the keep moving rule was narrowly

tailored, the MSHP stated that the rule applied more at night and less during the day. *Id.* at 12.

---

[7] As the Ninth Circuit has explained, there is no incentive to over-lawyer a case like this:

> It must also be kept in mind that lawyers are not likely to spend
> unnecessary time on contingency fee cases in the hope of inflating
> their fees. The payoff is too uncertain, as to both the result and the
> amount of the fee. It would therefore be the highly atypical civil
> rights case where plaintiff's lawyer engages in churning. By and
> large, the court should defer to the winning lawyer's professional
> judgment as to how much time he was required to spend on the
> case; after all, he won, and might not have, had he been more of a
> slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

[8] Compare Plaintiff's Memorandum in Support of Preliminary Injunction, ECF No. 21 at 8-9
*with* Def. St. Louis County Missouri's Response to Plaintiff's Motion for Preliminary Injunction,
ECF No. 35 at 7-8 and Colonel Replogle's Pre-Hearing Memorandum In Opp'n to Motion for
Preliminary Injunction, ECF No. 36, at 3-4.

The MSHP also alleged that Plaintiff had identified no MSHP officer enforcing the keep moving rule, *id.* at 6; meanwhile, the County argued both that it was merely following orders from the MSHP and that Plaintiff had failed to identify any County officers enforcing the rule, ECF No. 35 at 8; *id.* at 5-6.

Defendants' tactics increased the work required by Plaintiff's attorneys.  They now had to re-interview declarants and search for new fact witnesses to confirm that the keep moving rule existed, that it was not being enforced as the Refusal to Disperse statute, that the rule was often enforced during the day time, that both the County and the MSHP were involved in its enforcement, that the rule was still being enforced even if intermittently, and that both the County and the MSHP were still involved in efforts in Ferguson.  Further, in responding to both oppositions, Plaintiff's attorneys had to research the requirements and interpretive case law of Missouri's Refusal to Disperse Statute.  To respond to the County, Plaintiff's attorneys had to spend sufficient time researching *Monell* liability as applied to the complex situation in Ferguson.[9]  These requirements were on top of the normal requirements of demonstrating a likelihood of prevailing on Plaintiff Abdullah's First Amendment and Due Process claims.

Given how tenaciously Defendants contested the existence of the policy, responsibility for the policy, and the continuation of the policy (amongst other issues), this Court should not heed Defendants' complaints about Plaintiff's attorneys' time.  As the Eighth Circuit has stated,

_____

[9] County's objection to the time spent researching and responding to *Monell* liability, Cnty. Opp'n at 4, is particularly surprising since the County devoted the majority of their opposition to this defense.  Moreover, deciphering and responding to the County's *Monell* defense was a complicated endeavor because the County raised two separate *Monell* issues, each with its own set of facts and case law: (1) that the County was merely acting as an arm of the State because this was an MSHP rule not a County policy; and (2) that the rule's implementation was not so widespread as to constitute a policy. Given the importance of these arguments, and the County's own emphasis on them, Munger Tolles was justified in spending a sufficient amount of time refuting it (though that time is less than the 25 hours referenced by the County).

parties cannot "continue to contend that they have no liability here at all, with one breath, and

then assert that this case was a 'pushover' for plaintiff with the next." *Casey v. City of Cabool,*

*Mo.*, 12 F.3d 799, 805 (8th Cir. 1993); *see also City of Riverside*, 477 U.S. at 580 n. 11 ("The

government cannot litigate tenaciously and then be heard to complain about the time necessarily

spent by the Plaintiffs in response.") (internal quotation marks and citation omitted); *Henson v.*

*Columbus Bank & Trust Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985) ("While CB & T is entitled

to contest vigorously Henson's claims, once it does so it cannot then complain that the fees award

should be less than claimed because the case could have been tried with less resources and with

fewer hours expended.").

   The MSHP specifically argues that Munger Tolles' hours are excessive because this

"case was not complex factually as it involved witnesses describing simple interactions between

police and citizens . . . ."  MSHP Opp'n at 2.  First, such a position starkly contrasts with the

MSHP's opening salvo opposing the preliminary injunction:

> We are not aware of any reported preliminary injunction decision
> that addresses facts similar to those alleged here: tactical, evolving
> instructions, given to a cooperative group of law enforcement
> officers, for a particular situation at a very particular time and
> place to address constantly changing events.  What Plaintiff calls
> the "five-second rule" is not a policy, regulation or statute . . . .

ECF No. 36 at 2.  Moreover, in support of this new view that the case was factually simple, the

MSHP argues that Plaintiff's billing records do not reflect significant time spent locating fact

witnesses.  MSHP Opp'n 12-14.  However, to refute Defendants' factual denials, it was

necessary not just to locate fact witnesses but also to interview them, draft their declarations, and

prepare questions for their testimony, in addition to reading local news accounts of events in

Ferguson and reviewing photographic, twitter and video evidence.  The billing records contain

documentation of extensive, though reasonable, factual investigation by Plaintiff's counsel.

- 10 -

Plaintiff counts at least 48 entries related to factual investigation.  Of course, had Defendants conceded the relevant facts from the start, it would have mooted or lessened the need to factually document the keep moving policy, the way it was enforced, its continued enforcement, and the lack of an adequate alternative zone.

Defendants also argue that Munger Tolles used too many attorneys.  However, Munger Tolles' staffing decisions reflected the exigency of this case and Defendants' tenacity. Defendants do not deny that fewer attorneys would have been unable to file Plaintiff's preliminary injunction motion in only six days.

Defendants claim that Munger Tolles' staffing resulted in duplicative work.  However, Munger Tolles took deliberate steps to ensure this did not occur by dividing up sections of the brief and assigning fact witnesses to specific attorneys.  Davis-Denny Affidavit at ¶ 23.[10] Moreover, to the extent the potential for duplicative work remained, Plaintiff's attorneys have exercised billing judgment and excluded 152 hours, including hours that counsel concluded could arguably represent duplicative work.[11]  Plaintiffs' Memo at 13; Davis-Denny Affidavit at ¶ 18; Rothert Affidavit at ¶ 10.

---

[10] The MSHP complains that four attorneys spent time revising the memorandum in support of preliminary injunction and reply.  MSHP Opp'n at 16-17.  But because different attorneys were responsible for drafting different sections of the document, it follows that the same sort of division of work would apply for revisions.

[11] The County's two examples of overbilling are easily explained.  The County claims that Mr. Clancy billed 7.4 hours to "review Ferguson news stories."  Cnty. Opp'n at 3.  The County failed to note, however, that the task description for that 7.4 hour entry addresses far more than reviewing news stories: "Review news stories regarding activity in Ferguson; review filing regarding Ferguson; conference calls with G. Doty, G. Davis-Denny, K. Trujillo, and T. Rehn; meeting with G. Davis-Denny, K. Trujillo, and T. Rehn; research standard for preliminary injunction and vagueness standards; draft list of action items."  Exhibit B to Davis-Denny Affidavit at 22.  Next, the County complains that an excessive amount of time was spent regarding the Motion to Sequester Witnesses.  Here, it is possible to determine that Mr. Davis-Denny spent less than .9 hours on this Motion.  *Id.* at 25 (9/5/2014 and 9/8/2014 contain time (footnote continued)

Plaintiff's use of four Munger Tolles attorneys at the hearing was also reasonable in light of Defendants' tactics.  The MSHP argues that two attorneys would have had enough preparation time.  MSHP Opp'n at 16.  The MSHP ignores, however, that two weeks prior to the hearing, Defendants filed their oppositions denying the very existence of the keep moving rule.  Under these circumstances, it was reasonable for Munger Tolles to use four attorneys to ensure that the fact witnesses established a clear record of what was happening on the ground in Ferguson.  *See, e.g., Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998) ("Careful preparation often requires collaboration and rehearsal, and the court should not reward defendants for their vehement 'Stalingrad defense,' . . . Indeed . . . a litigant's staffing needs and preparation time will often vary in direct proportion to the ferocity of her adversaries' handling of the case . . . .") (internal quotation marks and citation omitted).[12]

The MSHP mistakenly contends that four attorneys were not necessary because the fact witness testimony was short.  MSHP Opp'n at 15.  But it was only because Munger Tolles dedicated substantial resources to preparing for the hearing that Plaintiff was able to present the testimony of seven witnesses in less than one day.  *See* Davis-Denny Affidavit at ¶ 23 (noting practice of dividing up witness preparation).  As Blaise Pascal famously quipped, "If I had more time, I would have written a shorter letter."

---

entries related to Motion to Sequester Witnesses).  Further, Ms. Degtyareva billed just .9 hours to this task on September 9, *id.*, and included it amongst a variety of other tasks billed on September 16, 2014, *id.* at 26.  Devoting around 2.5 hours to a written motion in Federal Court is not excessive.

[12] *See also White v. McKinley*, No. 05-0203-CV-W-NKL, 2009 WL 813372, at *4 (W.D. Mo. Mar. 26, 2009) ("More specifically, McKinley complains of the approximately six lawyers and one paralegal White's team devoted to the trial. This number was not unreasonable given the volume of evidence and complexities of the case. It was acceptable for attorneys on White's trial team to observe the trial where they were obviously assigned with researching legal issues and examining witnesses whose testimony overlapped with others on the stand.")

Defendants' citations to inapposite cases also do not demonstrate that Plaintiff's attorneys expended an unreasonable amount of hours in this case. Both Defendants cite to *Dorr v. Webb*, 741 F.Supp.2d 1022 (N.D. Iowa 2010), where the Northern District of Iowa reduced the hours claimed because the court thought the case was a push over:

> Following Sheriff Weber's deposition, Paul's chances of losing this case rivaled the odds of the Easter Bunny, during next February's Super Bowl, throwing the winning touchdown pass, off a triple reverse on the last play of the game, for a come from behind victory, for the St. Louis Rams (1–15 last year).

*Id.* at 1036.[13] Here, having lost his TRO request and with Defendants contesting both liability for and the existence of the keep moving policy, Plaintiff's chances were substantially less promising than the plaintiff's chances in *Dorr*.

---

[13] The MSHP also cites to two other inapposite cases in support of the claim that Plaintiff's attorneys expended too much time on this case.   *Snider*, 752 F.3d 1149, concerned a plaintiff who performed a single act (desecrating a flag) and who was then arrested based on a written Missouri statute prohibiting flag desecration in clear contravention of two United States Supreme Court cases.  *Id.* at 1154.  In contrast, here there was no single person, no single police officer, no discrete act, and no clear Supreme Court precedent.  Rather, Plaintiff Abdullah was faced with a situation affecting hundreds of individuals that in the words of the MSHP was "unclear and unstable" and a police response that was "quickly evolving."  ECF No. 36 at 9.  Moreover, while Plaintiff ultimately prevailed in his motion for a preliminary injunction, the legal complexity of this case far exceeded that of a case where two Supreme Court cases directly prohibited the actions of Defendants.  The case *Rohrbough v. Hall*, *et al.* is also inapposite.  That case involved the allegation of excessive force by two officers against one individual on one occasion, again differing in size, scope, and expediency from the case presented here. Additionally, in *Rohrbough*, the plaintiff was not successful in all of his claims.  As such, the plaintiff's attorneys reduced their time by roughly 150 hours.  *See* MSHP Opp'n at 19 n.12. *Fitzgerald v. City of Los Angeles*, 03-1876 DDP (C.D. Cal. Apr. 7, 2009) is more on point.  That case concerned a policy enforced by the entire Los Angeles Police Department against a group of individuals living on Skid Row.  Sobel Declaration, ECF No. 70-4, at ¶ 25; *id.* at Exhibit 10 at 2. In *Fitzgerald*, the court awarded 745.22 hours for work done to extend a 2003 injunction, including interviewing declarants, briefing two motions to extend the injunction and Defendants' opposition, and negotiating a settlement agreement.  *Id.* at Exhibit 10 at 22-23.  The MSHP argues that the fee award for the initial 2003 injunction, $94,720, is more on point and then somehow extrapolates that such an amount represents 180 hours of work.  MSHP Opp'n at 20-21.  However, the fees reached for the 2003 injunction were a product of settlement with the (footnote continued)

- 13 -

Finally, there is no merit to Defendants' complaint that Plaintiff's counsel's block billing was inappropriate. *Nassar v. Jackson*, ---F.3d.---, 2015 WL 871766, at *4 (8th Cir. Mar. 3, 2015) (rejecting argument that district court should have reduced fee due to block billing and finding no abuse of discretion). So long as "the entries in counsel's list are sufficiently detailed . . . to review what tasks were performed by counsel and to determine whether counsel's requests are reasonable or duplicative . . . [n]othing more is required." *Phelps-Roper v. City of Manchester, Mo.*, No. 4:09CV1298 CDP, 2010 WL 4628202, at *3 (E.D. Mo. Nov. 8, 2010).

Here, Munger Tolles' bills are sufficiently detailed to determine whether time was expended reasonably. As the County concedes, "the various activities for which time was billed appeared to be reasonable legal tasks for the prosecution of the lawsuit." Cnty Opp'n at 5. Further, Plaintiff's attorneys have already exercised billing judgment to reduce their hours by 152 hours. Davis-Denny Affidavit at ¶ 18; Rothert Affidavit at ¶ 10.

Moreover, the County's only specific objections to block billing rely on the assumption that Plaintiff's attorneys devoted the entirety of their time each day to one task out of many in a particular entry, an assumption which the County concedes is unwarranted and illogical. Cnty. Opp'n at 3-5. Of course, if all time were attributable to just one task, the other tasks would not have been entered. In short, no reduction for block billing is warranted.

## IV.    The Claimed Expenses Are Reasonable

Defendants concede the reasonableness of the majority of expenses claimed by Plaintiff. The County objects only that it should not have to pay for the travel and lodging of witnesses because "hundreds of persons who reside in the St. Louis area were present at the Ferguson

---

City, Exhibit 10 to Sobel Declaration at 3-4, and, thus, less relevant to this case than the litigated fee dispute that occurred after the plaintiffs sought to extend the injunction.

protests." Cnty. Opp'n at 8. But the experiences of the protesters were not identical. Each out-of-town witness provided unique, valuable testimony that likely could not have come from another source. For example, Ms. Holbrook testified about two videotaped encounters she witnessed where the County enforced the keep moving rule, including one where Plaintiff Abdullah was told to keep moving while he stopped to pray. Preliminary Injunction Hearing Transcript, Aug. 18, 2014 at 12:15-14:2. Mr. Mckesson described his contemporaneous tweets that captured his experience with the keep moving rule. *See, e.g. id.* at 62:11-67:12. Mr Reinstein provided the unique perspective of a volunteer legal observer, who not only saw the rule enforced but had his own rights infringed when it was imposed upon him. *Id.* at 130:9-132:5. Further, Mr. Reinstein described how an officer bluntly stated that enforcement of the rule was at the officer's discretion. *Id.* at 133:7-19. The unique value of these witnesses justifies their travel costs. Moreover, while hundreds or thousands of protesters may have been subjected to the keep moving rule, most did not publish their experiences on the internet, reach out to the ACLU, or take other actions that would allow counsel to identify them as witnesses.

## V.    Conclusion

For the reasons set forth above and the reasons expressed in Plaintiffs' original memorandum, Plaintiff Abdullah respectfully requests this Court award attorneys' fees of $362,964.00 plus expenses of $18,822.59 not compensated in Plaintiff's Bill of Costs for the professional efforts expended on Plaintiff Abdullah's behalf.

DATED:  March 16, 2015                     Respectfully submitted,

                                            /s/ Anthony E. Rothert
                                           ANTHONY E. ROTHERT, #44827MO
                                           GRANT R. DOTY, #60788MO
                                           AMERICAN CIVIL LIBERTIES UNION
                                                OF MISSOURI FOUNDATION
                                           454 Whittier Street
                                           St. Louis, Missouri 63108
                                           Telephone:     (314) 652-3114
                                           Facsimile:     (314) 652-3112
                                           trothert@aclu-mo.org
                                           gdoty@aclu-mo.org

                                           GILLIAN R. WILCOX, #61278MO
                                           AMERICAN CIVIL LIBERTIES UNION
                                                OF MISSOURI FOUNDATION
                                           3601 Main Street
                                           Kansas City, Missouri 64111
                                           Telephone:     (816) 470-9938
                                           Facsimile:     (314) 652-3112
                                           gwilcox@alcu-mo.org

                                           GRANT A. DAVIS-DENNY
                                           THOMAS P. CLANCY
                                           VICTORIA A. DEGTYAREVA
                                           THANE M. REHN
                                           KENNETH M. TRUJILLO-JAMISON
                                           MUNGER, TOLLES & OLSON  LLP
                                           355 South Grand Avenue, Suite 3500
                                           Los Angeles, CA   90071
                                           Telephone:     (213) 683-9100
                                           Facsimile:     (213) 687-3702
                                           Grant.Davis-Denny@mto.com
                                           Thomas.Clancy@mto.com
                                           Victoria.Degtyareva@mto.com
                                           Thane.Rehn@mto.com
                                           Kenneth.Trujillo-Jamison@mto.com

                                           **ATTORNEYS FOR PLAINTIFFS**

- 16 -

**Certificate of Service**

I hereby certify that on March 16, 2015, a copy of the foregoing was served on counsel of record by operation of the ECF/CM system.

<u>/s/ Anthony E. Rothert</u>