UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MUSTAFA ABDULLAH, et al., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:14 CV 1436 CDP |
| | ) |
| COUNTY OF ST. LOUIS, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

On December 22, 2014, upon joint motion of the plaintiffs and of defendants Ronald K. Replogle and County of St. Louis, Missouri, I entered an order permanently enjoining defendants from enforcing a "keep-moving" rule against any person peaceably assembling on the public sidewalks in Ferguson, Missouri. Pursuant to the stipulated order, the parties agreed that this court would retain jurisdiction to adjudicate any claims for recovery of attorneys' fees and costs. Plaintiffs have now filed a bill of costs and a motion for attorneys' fees in accordance with Rule 54, Fed. R. Civ. P., and 42 U.S.C. § 1988. The plaintiffs seek taxable costs of $900 and attorneys' fees and expenses of $380,786.59. Defendants do not object to plaintiffs' costs but challenge the reasonableness of counsels' hourly rate and the total number of hours worked. In particular,

defendants argue that this case could and should have been staffed by local attorneys charging local rates, but instead it was staffed with five attorneys from Los Angeles, California, where market rates are substantially higher than those in St. Louis. Defendants argue that plaintiffs inappropriately staffed the case with a total of six attorneys when it could successfully have been handled by fewer attorneys. After examining the record and evidence submitted by plaintiffs, I find that plaintiffs' non-local counsel's rates and hours billed are excessive and I will reduce plaintiffs' award accordingly. Therefore, I conclude plaintiffs are entitled to costs in the amount of $900 and attorney's fees and expenses in the amount of $152,867.34.

**Bill of Costs**

Under Rule 54(d), "costs—other than attorney's fees—should be allowed to the prevailing party." The specific costs that are recoverable are listed in 29 U.S.C. § 1920. Plaintiffs have submitted a bill of costs in the amount of $900, claiming costs only for fees of the clerk—specifically, their filing fee and pro hac vice fees for five attorneys. Fees of the clerk are among the recoverable fees listed in § 1920, and defendants have not challenged these costs, therefore, plaintiffs are entitled to recover the full amount listed in their bill of costs.

**Attorneys' Fees and Expenses**

Plaintiffs have asked for attorneys' fees in the amount of $362,964 and expenses of $18,822.59. Plaintiffs' six attorneys included one lawyer from the American Civil Liberties Union of Missouri Foundation, and one junior partner and four associates from the firm Munger, Tolles, & Olson LLP, a firm with offices in Los Angeles and San Francisco. Also included in the fees calculation are hours worked by an Automated Litigation Support Specialist and a paralegal, both from the Munger firm.

As the prevailing parties in a civil rights action, plaintiffs are entitled to "reasonable" attorneys' fees under 42 U.S.C. § 1988(b). In order to determine the amount of a reasonable fee, I should employ the "lodestar method" where the starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014). Once I have determined that amount, I should consider a number of other factors to determine whether the fee should be adjusted upward or downward.[1] *Hensley*, 461 U.S. at 434; *see also City of Riverside v. Rivera*, 477 U.S. 561, 568 n.3 (1986).

---

[1] These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the attorney's preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases). *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714,

The chart below is a breakdown of plaintiffs' lodestar calculation for their attorneys' fees:

|  | Hours | Rate | Total |
|---|---|---|---|
|  |  |  |  |
| G. Davis-Denny (Munger junior partner) | 130.6 | $695 | $90,767 |
| N. Rehn (associate) | 65.2 | $595 | $38,794 |
| T. Clancy (associate) | 209.4 | $490 | $102,606 |
| V. Degtyareva (associate) | 121.4 | $490 | $59,486 |
| K. Trujillo-Jameson (associate) | 65.8 | $490 | $32,242 |
| S. Bales (Automated Litigation Support Specialist) | 54.8 | $355 | $19,454 |
| J. Driver-Moore (paralegal) | 43 | $260 | $11,180 |
| A. Rothert (ACLU attorney) | 24.1 | $350 | $8,435 |
| **TOTAL:** | 714.3 |  | $362,964 |

Plaintiffs' expenses consist of charges for transcription of the preliminary injunction hearing and the temporary restraining order hearing, a private process server, copies, attorney and staff travel and lodging, attorney and staff internet use, fact witness travel and lodging and expert witness fees and expenses.

---

717–19 (5th Cir.1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 90, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

*ACLU Fees*

Defendant Replogle's primary objection to ACLU attorney Rothert's fee is that his hourly rate is high. Replogle points out that in *Snider v. City of Cape Girardeau*, 752 F.3d 1149 (8th Cir. 2014), the Eighth Circuit approved an attorney award for Rothert that was calculated using an hourly rate of $300. The complaint in *Snider* was filed with the district court in 2010, and the bulk of the work for which plaintiff sought attorneys' fees was done from 2010 to 2012. The instant case was filed and litigated in late 2014. It is predictable and not at all unreasonable that Rothert's rates would increase over the course of three years. Rothert's current rate is within the range of prevailing market rates for an experienced civil rights attorney, and he has recently been awarded fees based on an even higher hourly rate. *See Survivors Network of Those Abused by Priests, Inc. v. Joyce*, No. 4:12cv1501-ERW, 2015 WL 4042143, at *1 (E.D. Mo. July 1, 2015); *Kennard v. Kleindienst*, No. 2:14cv4017-BCW (W.D. Mo.); *see also Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (in determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates).

Defendant County's only objection to Rothert's fees is to the one hour billed by Rothert for the TRO hearing. However, the County fails to explain the basis for its objection or provide legal support for not awarding fees for that hour. The

number of hours expended by Rothert was highly reasonable, particularly considering that he performed the initial evaluation of the case, and filed a complaint, a temporary restraining order, and a supporting memorandum under a pressing time frame. Accordingly, based on the record before me, I conclude Rothert's fees and hourly rate are reasonable, and his fees will be awarded to the full extent requested.

### *Munger Firm's Fees*

Defendants object to the Munger firm's fees on two grounds. First, they assert the attorneys' hourly rates are unreasonable because St. Louis hourly rates should apply. Next, they argue that staffing the case with five attorneys was unnecessary and resulted in the billing of excessive and redundant hours, particularly with regard to the presence of four attorneys and one litigation support specialist at the preliminary injunction hearing.

As for Munger's staffing of the case, although I acknowledge that large firms typically staff cases with multiple attorneys, I conclude that staffing here was excessive for the demands of the case. This was not a factually complicated matter—there were no depositions, and little to no document discovery. In terms of factual complexity, this case was similar to many routine civil cases—it required examination of one expert and a handful of fact witnesses, testifying about what they observed on the streets of Ferguson; and it required cross examination of four

defense witnesses on policy matters.  Because of the time frame and the need for quick action given the ongoing demonstrations, using multiple attorneys and expending significant hours when the case first came in to the firm is somewhat understandable.  Munger was required initially to comprehend the case and draft preliminary injunction documents on a very constricted timeline.  However, the attorneys had four weeks between the time their preliminary injunction motion was filed and the motion hearing, and two weeks between the time defendants' opposition briefs were filed and the hearing.  This is a typical timeline for a preliminary injunction motion, and given the relative demands of the case already discussed, it was not abnormally burdensome.  However, in the time period between filing the preliminary injunction motion and the date of the hearing, Munger spent at least 340 hours working on the case, which is 42 eight-hour days.  It spent this amount of time despite the fact that five of the seven witnesses who testified for plaintiffs at the hearing submitted affidavits in support of the motion for preliminary injunction, indicating their knowledge and testimony were worked up even before the motion was filed.

Although plaintiffs argue that in preparing for the hearing, redundancies were avoided by assigning each attorney his or her own witnesses to handle, I believe that the additional attorneys added inefficiency to the process.  Even if the five attorneys' assignments never overlapped, Munger attorneys were still required

to synthesize the work of five people (instead of two) for a cohesive presentation at the hearing.

Additionally, as Davis-Denny acknowledged in his affidavit, the attorneys reviewed one another's work. Although I agree that this is typically a helpful practice, it seems clear that here, some of the redundancy in reviewing could have been avoided. For instance, in four separate time entries, attorney Degtyareva drafted, Davis-Denny reviewed, and Degtyareva revised and later finalized a two-page motion to sequester witnesses.[2]

Plaintiffs argue that the hours spent on the case were mandated in part by defendants' shifting story as to the keep-moving rule. However, so long as plaintiffs' own witnesses' accounts did not change, it is difficult to understand how the defendants' fluctuating narrative created significantly more work for plaintiffs' attorneys.

Finally, I find that charging fees for four attorneys and one litigation specialist to travel to[3] and attend an eight-hour hearing that could have been handled by two attorneys is excessive.

---

[2] In reality, all that would have been required to sequester witnesses was for one attorney to stand up in court at the beginning of the hearing and invoke Federal Rule of Evidence 615.

[3] Degtyareva appears to have not billed for her travel time, and Davis-Denny wrote off some of his travel time.

In light of all of the above, I conclude that despite the success of their case, the number of hours billed by the Munger firm was excessive. Ultimately, I believe two attorneys could have handled the matter; therefore, I will award the hours billed by Davis-Denny and Clancy (the associate who billed the highest number of hours), but the hours of all other attorneys are excluded. I will reduce the hours of the litigation specialist, Bales, to sixteen. This accounts for reasonable time spent on preparing for and attending the hearing. I will also reduce the hours of the paralegal, Driver-Moore, to eight, which accounts for reasonable time spent on preparing exhibits.

As to Munger's hourly rates, I conclude that they should be reduced to more closely reflect rates typical of the St. Louis market. Generally, a reasonable hourly rate means "the ordinary rate for similar work in the community where the case has been litigated." *Snider*, 752 F.3d at 1159 (citing *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 995 (8th Cir. 2012)). Where a plaintiff does not use local counsel, the district court may award fees based on a non-local hourly rate if the plaintiff shows that despite diligent, good faith efforts, he was unable to find local counsel willing and able to take the case. 752 F.3d at 1159.

Plaintiffs argue that Rothert made diligent, good faith efforts to find local counsel to take this case, but his efforts failed. Rothert's affidavit states that when he realized the ACLU, with its already demanding case load, could not handle this

case, he spoke with various mid- to large- sized firms about taking on this and other Ferguson-related matters. None of the firms were willing to do so because of the controversial nature of the cases and conflicts of interest in being adverse to the State of Missouri.[4] His affidavit makes it clear that he limited his search to mid- to large- sized firms because he believed they would be the only ones with sufficient resources to handle the exigencies of this case. His affidavit does not indicate how many firms he spoke with.

Assuming Rothert's search for a mid- to large-sized local firm was diligent, I conclude that his efforts still fell short because I am unconvinced that a smaller local firm, or a combination of smaller local firms, would not have been willing and able to take this case. The events in Ferguson were highly publicized, and at the time this case was filed, there was evident public sympathy, locally and nationally, for the peaceful protestors, whose rights the plaintiffs in this case sought to protect. *See, e.g.*, Ray Downs, *Police in Ferguson Fire Tear Gas on Protestors Standing in Their Own Backyard*, Riverfront Times, August 12, 2014, http://www.riverfronttimes.com/newsblog/2014/08/12/police-in-ferguson-fire-tear-gas-on-protesters-standing-in-their-own-backyard; Daniel Hill, *Peaceful Crowd of Protesters Dispersed by Heavily Militarized Police Force in Ferguson*, Riverfront

---

[4] Rothert's affidavit also mentions that in 2014, he attempted but was unable to find any large or mid-sized Missouri firms willing to take cases challenging Missouri's same sex marriage laws, also because of conflicts of interest in being adverse to the State. This is irrelevant.

Times, August 13, 2014, http://www.riverfronttimes.com/newsblog/2014/08/13/peaceful-crowd-of-protesters-dispersed-by-heavily-militarized-police-force-in-ferguson; *Unbelievable Ferguson Police: Our View*, USA Today, August 19, 2014, http://www.usatoday.com/story/opinion-/2014/08/14/michael-brown-shooting-ferguson-missouri-police-editorials-debates/14086807/; *Ferguson Police Fumbled Protests*, Washington Post, August 14, 2014, https://www.washingtonpost.com/opinions/ferguson-police-fumbled-protests/2014/08/14/637aea3a-23f3-11e4-86ca-6f03cbd15c1a_story.html. I believe that there were competent, capable lawyers in St. Louis that would have been willing, if not eager, to take on a case under these circumstances.

Furthermore, the demands of this case were not so great that a small local firm or a combination of two or more small local firms could not have handled it. Although the timelines were tight, the facts were neither complicated nor dense, and a smaller firm with even minimum §1983 experience would have had little difficulty getting a handle on the legal issues. I also find it impossible to believe that smaller firms do not have the resources to prepare for and handle what was essentially a one-day trial with a month-long lead time. Small local firms handle such trials regularly.

Clearly, the Munger lawyers moved quickly and worked hard on this matter under difficult, stressful circumstances. They did an excellent job litigating the

case, and I am grateful for their help.  But I also note that their compensation here goes beyond the monetary: multiple of Munger's young lawyers were able to work on a high profile, constitutional law case.  They gained rare, trial-like experience on a condensed timeline in federal court.  I suspect these are among the reasons Munger reached out to the ACLU in the first place when it offered to take on a Ferguson-related case.

Given the obvious exigencies of this case, I recognize that an exhaustive search of St. Louis law firms was impossible, but I believe that if the ACLU had not limited the search to mid- to large-sized firms, it would have been able to find willing and able counsel locally.  Therefore, I will reduce MTO's rates to more closely resemble ordinary rates for similar work in the St. Louis market.  Davis-Denny's rate will be reduced to $400 per hour, and Clancy's rate will be reduced to $350 per hour.  Bales' and Driver-Moore's rates will be reduced to $150 per hour, which is on the high end of the reasonable range for paralegals in St. Louis.

As defendants have not objected to the expenses for Rothert and Munger they will be awarded in full except that travel, lodging, and internet expenses for Bales, Rehn, and Degtyareva will be excluded in accordance with my conclusions above.

To summarize, I will allow Rothert the full amount of fees ($8,435) and expenses ($1,422.70) requested.  I will award the Munger firm expenses in the

amount of $13,879.64. The Munger fees will be awarded as follows: Davis-Denny in the amount of $52,240, Clancy in the amount of $73,290, Bales in the amount of $2,400, and Driver-Moore in the amount of $1,200. The total fee and expense award is thus $152,867.34. Additionally, taxable costs in the amount of $900 as requested will be allowed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for a bill of costs [#68] is **GRANTED** and the Clerk of the Court shall tax costs in the amount of $900.

**IT IS FURTHER ORDERED** that plaintiffs' motion for attorneys' fees [#69] is **GRANTED IN PART** and defendants are jointly and severally liable for plaintiffs' attorneys' fees and expenses in the amount of $152,867.34.

**IT IS FURTHER ORDERED** that plaintiffs' motion for leave to supplement [#78] is **DENIED** as moot.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 24th day of September, 2015.